NOT DESIGNATED FOR PUBLICATION

No. 126,407

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL WAYNE STILL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Submitted without oral argument. Opinion filed September 6, 2024. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., WARNER and COBLE, JJ.

PER CURIAM: Charged with various drug-related crimes, Michael Wayne Still entered into a plea agreement with the State, part of which would result in the State recommending a departure from a prison sentence to probation—if Still complied with his bond conditions. Still agreed to plead no contest and the district court accepted his plea, but then he violated his bond conditions, releasing the State from its recommendation of probation. Even so, Still agreed to admit to the bond violations and the State gave a new recommendation of a durational departure to 20 months' imprisonment. At sentencing, the district court did not follow the parties' agreement and

1

sentenced Still to a lesser departure of 35 months' imprisonment. After the sentencing hearing, Still sought to withdraw his plea. Following an evidentiary hearing, the district court denied the motion, finding that Still failed to show manifest injustice to warrant the withdrawal of his plea. Still timely appeals that ruling, but because we find no abuse of discretion by the district court, we affirm its decision.

FACTUAL AND PROCEDURAL BACKGROUND

Given the issues raised in this appeal, a recitation of the facts underlying Still's criminal charges is unnecessary. Generally, in August 2022, the State charged him with multiple drug crimes. Although a written accord does not appear in the record before us, the parties announced the terms of a plea agreement during a scheduled arraignment hearing. As part of the plea, the State agreed that—in exchange for Still's plea of no contest to possession of methamphetamine and anticipating an A criminal history score—it would recommend a dispositional departure to probation from a standard sentence of 40 months' imprisonment. The State specified that if Still violated the conditions of his bond, failed to appear in court, or attempted to withdraw his plea offer, the State would be free to argue for the presumptive prison sentence. Still was required to receive an alcohol and drug evaluation as a condition of probation, the State recommended he be released on a $5,000 own recognizance (OR) bond, and he was to follow all conditions assessed by court services upon his release.

Still acknowledged during this hearing that the district court may or may not follow the parties' sentencing recommendations. The district court informed Still of his rights to have a trial by judge or jury, the State's burden to prove him guilty beyond a reasonable doubt, and his right to appeal if he were convicted. Still answered, "Yes, sir" when asked if he understood that he could plead guilty or no contest, which terminated his presumption of innocence and right to a trial, and the district court would find him guilty of the charges. When asked if he had sufficient time to discuss his plea with his

2

attorney, he agreed he had and affirmatively stated he "waive[d] the jury [trial]" and pleaded no contest. Still agreed he was not under the influence of any medication, drugs, or alcohol; his mind was clear, and he understood what the court was doing.

The State recited the facts of the case, to which Still did not object, and the district court accepted Still's plea of no contest to one count of possession of methamphetamine, found him guilty, and dismissed the remaining charges. The district court set sentencing for a later date and released Still on the OR bond with the conditions that he would not possess or consume alcohol or illegal drugs, obey all laws, and "stay out of trouble." Still verbally acknowledged he understood the terms of his release.

Once before his plea and twice after, the State sought to revoke Still's pretrial bond for failure to comply with his bond conditions. Twice, within 60 days of his plea, court services officers reported that Still tested positive for methamphetamine and alcohol, and Still signed voluntary admissions of using both. Then, in February 2023, the State again moved to revoke Still's bond because he tested positive for amphetamine, methamphetamine, and alcohol. Although his bond was modified through each revocation proceeding, Still remained on various levels of bond through sentencing despite serving stints in jail when arrested on each bond violation.

As anticipated, the presentence investigation (PSI) report scored Still's criminal history as A. The PSI recommended a presumptive prison sentencing range between 37 and 42 months, with a standard of 40 months.

At sentencing, the State informed the district court that Still violated his most recent bond, and he was prepared to admit to the new violation in exchange for the State recommending a durational departure of 20 months. When asked about his understanding of the status of the case, Still's counsel agreed to the State's recitation and, at the court's direction, agreed to file a written departure motion following the hearing. The district

3

court noted the results of the PSI and Still's counsel agreed with the PSI's findings. Neither party presented any further arguments nor offered any reason for the district court to postpone sentencing. Still declined to make a statement when offered the opportunity to do so.

The district court explained that based on Still's extensive criminal history and his continued failure to follow the plea agreement conditions, it was having a hard time departing from the presumptive sentence. But, considering that Still admitted to the bond violations, the district court found some substantially compelling reasons to depart "some" and sentenced Still to 35 months' imprisonment.

Within two weeks of sentencing, Still's counsel moved to permit the withdrawal of his plea. Still's counsel, Eric Harman, argued manifest injustice must be corrected and Still should be appointed new counsel because Harman could be a potential witness. The district court allowed Harman's withdrawal and appointed new counsel, Clay Kuhns, for the purpose of the motion to withdraw his plea. Kuhns filed a motion for discovery but did not renew or file a new motion to withdraw plea.

Two months later, the district court held a hearing on the motion to withdraw plea. Still called Harman as a witness. Harman testified that he met with Still at least four times before the arraignment, each occasion to be at least 30 minutes. Harman stated he did not have any difficulty communicating with Still, and together they discussed a plan regarding his pending charges. Harman confirmed with Still that the plan was to ask for diversion, but if it failed, to request probation. Still was aware of the offer that Harman made to the county attorney prior to the arraignment hearing. Harman testified that, at one point, Still appeared for a hearing under the influence of alcohol, at which time the judge continued the hearing to a later date. Harman said then, at the sentencing hearing, he reached another plea agreement with the State, encompassing an oral motion to durational departure of 20 months' imprisonment if Still admitted to the bond violations.

4

Harman said although the offer was not presented to Still in writing, Still "listened to every word" Harman told him, and "repeated back to [Harman] exactly what" was told to him, to ensure Still's understanding.

Harman also explained that during the multiple times he talked to Still regarding the plea offer, before Still accepted it and before the sentencing, Still understood what was going on with his plea. Still never expressed that he was misled, coerced, or taken advantage of, nor did Still ever express a lack of understanding with how Harman was advising him or that he had a problem with Harman's representation.

Still did not testify. During closing argument, Kuhns argued Still did not fully understand Harman's advice, and Harman's attempts to have Still repeat everything back to him was evidence the attorney was not convinced Still understood the terms of his plea. Kuhns further argued Still was not provided the plea in writing and did not have the chance to absorb his plea agreement. Kuhns claimed Still only wanted to get out of jail and the State "thr[e]w carrots" at him to entice him to get out of jail and take the plea. Kuhns argued these facts demonstrated sufficient manifest injustice to support the withdrawal of Still's plea.

The district judge disagreed, finding no showing of manifest injustice and denied Still's motion to withdraw his plea, stating:

> "The bottom line is the only evidence before the Court—[Still] didn't testify, so I don't really have anything that questions anything that Mr. Harman said. And, I think that evidence was that he actually went over it painstakingly. I don't take the representation—I know counsel is making an argument. I don't agree with that characterization of what went on.
> "He—any hint that he may not understand. He had him repeat back so he was sure he understood. And, that's just good professional conduct. Making sure, and especially when he has incidents where his client had been using [substances], *et cetera*,

5

wanted to make sure he understood. And, he did that painstakingly through the initial plea agreement and then also when there was a modification because of his bond violations. Took him through that very carefully so he would be sure that he understood. And, then the judge went through it, again, to make sure that he understood.

"So, there is really no evidence before the Court that he did not understand. Any credible evidence, anyway. Put it that way, other than the argument itself.

"So, I will find that he has not shown manifest injustice, and therefore the plea stands as-is."

Still timely appeals.

### STILL'S MOTION TO WITHDRAW HIS GUILTY PLEA

Still argues on appeal that the district court erred by denying his motion to withdraw his plea because he adequately established manifest injustice. Specifically, Still asserts that his plea was not fairly and understandingly made.

*Applicable Legal Principles*

Although K.S.A. 22-3602(a) broadly prohibits an appeal "from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere," it does not preclude an appeal from the district court's denial of a motion to withdraw a plea under K.S.A. 22-3210(d). See *State v. Smith*, 311 Kan. 109, 122, 456 P.3d 1004 (2020) (stating Court of Appeals will have jurisdiction to consider appeal from district court denial of defendant's motion to withdraw plea).

Generally, appellate courts review a district court's decision to deny a motion to withdraw a guilty or no contest plea for an abuse of discretion. *State v. Ellington*, 314 Kan. 260, 261, 496 P.3d 536 (2021). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). "The

6

movant bears the burden to prove the district court erred in denying the motion. [Citation omitted.]" *State v. Hutto*, 313 Kan. 741, 745, 490 P.3d 43 (2021).

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 22-3210(d)(2). "Factors a court generally considers in determining whether a defendant has shown the manifest injustice necessary to withdraw a plea after sentencing mirror those considered when reviewing for good cause to support a presentence motion." *Hutto*, 313 Kan. at 745; see *State v. Shields*, 315 Kan. 131, 139-40, 504 P.3d 1061 (2022). These factors are commonly referred to as the "*Edgar* factors," and include: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). Manifest injustice refers to situations when denying a withdrawal of the plea would be "obviously unfair or shocking to the conscience." *Hutto*, 313 Kan. at 745.

*Still Failed to Establish Manifest Injustice*

On appeal, Still argues only the third *Edgar* factor—that his plea was not understandingly made. We must then deem any other argument on the *Edgar* factors waived because Still did not discuss them on appeal. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). Also, Still fails to specify whether the district court's decision was based on an error of fact, error of law, or was simply unreasonable. But because Still's argument centers on the testimony of his trial counsel during the hearing for the motion to withdraw plea, we largely review the district court's decision for error of facts. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (Issues not adequately briefed are deemed waived or abandoned.).

Our thorough review of the record demonstrates that Still's claim of manifest injustice is both conclusory and unsupported. He reasons only that he did not "truly" understand his plea because neither agreement was presented in writing. Still argues he was induced by the possibility of release from jail and, as a result, he made the plea without a full understanding of the agreement. But he offers no evidence to support this assertion.

Most damaging to his appeal is that the only evidence offered at the change-of-plea hearing runs contrary to Still's claim. In fact, the only evidence presented to the district court was Harman's testimony, which Still did not contest. In general, uncontroverted testimony should not be disregarded by the trial court unless it is improbable, unreasonable, or untrustworthy. *State v. Bolinger*, 64 Kan. App. 2d 115, 128, 547 P.3d 575 (2024). Here the district court gave significant credit to Harman's uncontroverted testimony and articulated its findings in detail, explaining that no other credible evidence was before the court to establish that Still did not understand the plea, aside from his counsel's closing argument. The district court apparently found Harman's testimony credible, and it is well established that an appellate court does not reweigh the district court's credibility findings. *State v. Reu-El*, 306 Kan. 460, 472, 394 P.3d 884 (2017).

Moreover, Still did not deny acknowledging all the terms and answering the district court's questions regarding his plea during the arraignment and sentencing hearings. He does not articulate exactly what he misunderstood or why he raised no concerns during the plea colloquy. By failing to articulate his specific misunderstandings, Still does not meet his burden to show that his plea was not fairly and understandingly made under the *Edgar* factors. As a result, Still does not demonstrate manifest injustice—that denying his motion to withdraw his plea would be obviously unfair or shocking to the conscience. See *Hutto*, 313 Kan. at 745.

8

*Conclusion*

The record sufficiently shows that a reasonable person could have found that the district court's decision to deny Still's motion to withdraw his plea was supported by the evidence. For the preceding reasons, we find the district court did not abuse its discretion by denying Still's motion to withdraw his plea.

Affirmed.